May it please the court, my name is Chandra Khan. And I'm the appellant in this case. Do you wish to reserve any time for rebuttal, Mr. Khan? Yes, please. Three minutes. Yes, sir. There are three issues which I have raised in this appeal. You're going to have to pull the mic down just a little bit. Right. Yes, great. Thank you. There are three issues that I have raised in this appeal. And these are whether the award of $0 for compensatory damages was a legal error. Let me ask you a question on that. You asked for what in the jury instructions? In the jury instructions – You asked for front pay and back pay? In jury instructions we asked for punitive damages. In these jury instructions there was no instruction asking for back pay and front pay. Well, the jury I thought gave you pretty much what you asked for. That is right. We did present – 30 and 50 equals 80. Right. We did present evidence on both back pay and front pay to the jury. Okay. If you're asking for front pay, doesn't that sort of cancel out being reinstated? Yes, Your Honor. Yes, I am aware that one cannot ask for duplicate relief. But then afterwards, like, okay, I got something and I want more is the impression that it gives. No, Your Honor. You got the front pay. You can't get reinstated if you don't get front pay. Your Honor, this is – Or if you get reinstated, you don't get, you know, one or the other. I did request that the award may be reduced by $50,000 and I may be granted promotion. But it's a little late in the game to do that now, right? Well, the point is whether the court was required to go into that question of whether promotion or reinstatement was visible before submitting the claim of front pay to the jury. The question is – But didn't you invite the court to submit the question of front pay to the jury? Well, we did submit that as an element of damages, yes. Right. But – So why should you be allowed to complain that the court did exactly what you asked the court to do? The only reason is that there are some affiliate courts which have held that – No, but the point is when did you first object to receiving front pay rather than being promoted? I said reinstatement. I was mistaken. Rather than being promoted. That was after the jury – after the award. After the verdict. That's too late. I mean, did you ask for this in jury instructions to the court? I want to be promoted. I am now giving up my request for a jury instruction on front pay. That was a part of the complaint and that was a part of the demand. But at the jury instructions, did you say to the court, I am not asking for front pay any longer. What I am asking for in this jury instruction is one that relates to my being promoted. That's the relief I want from this jury if they find in my favor. Well, the question is the question of promotion is not a matter for a jury to decide. That's for the judge to decide. That's for a trial judge to decide. But did you ask the court – if you wait until after the judgment came down, it's too late. I mean, you can only deal with what's before you, not what somebody who wins says, I mean, we're all like that. If you get something, you go, I could have got a little more. But it's too late. Your Honor, this is not a question of asking for a little more, because as I said earlier, I did ask for it to be reduced, the amount to be reduced, and me being given promotion instead. And the only reason I raise this issue is that there are some circuit court cases which have said that for the trial court to submit a claim for front pay or for a trial court to submit a claim for front pay to the jury without first deciding whether reinstatement was feasible and the promotion was feasible. But to borrow from the argument just before us, the triggering event here is what you asked for. When did you first ask for being promoted instead of getting front pay? When did you first ask for it? After the verdict, yes. So you – not even – you said at one point, I thought, earlier, that you may have asked for it in your complaint. Yes, I did ask for it in the complaint, yes. Don't you have to pick one or the other? I did ask for it in the complaint, yes. I mean, you either get money or you get promoted. Which did you ask for in your complaint? I asked for injective relief and damages. But you – can you only – if from the time they should have given you something up to the time they didn't, that's called back pay. Right. Front pay is, okay, I didn't get it, therefore I'm getting something else. That's something else. It appeared to us that you asked for money rather than being promoted. You can only get one. Well, I did later on after the – okay, let me put it more clearly. In the complaint, things were not so specific. Complaint was sort of general. It didn't say very clearly that I want – And that's often the way it's done even by lawyers. Right. That I want back pay, I want front pay, I want promotion for professor. It didn't clearly state – it did not clearly delineate the kind of relief I was seeking. It basically said that I want damages and injective relief. And that in some sense subsumes demand for – request for promotion or order of promotion and for damages. But you knew, did you not, that you couldn't get both front pay and an injunction for promotion? Yes, Your Honor. And knowing that, you submitted proof relating to front pay, and the jury relied on the proof and agreed with your proof, accepted your proof. Yes, Your Honor. So why shouldn't we conclude that you made an election by how you tried your case and what proof you put in and what you asked the jury to do, and you succeeded in getting the jury to do what you asked for? And then as Judge Ambrose says, it's then too late after the trial was over to say, well, I wish in hindsight that I had not put in the proof about front pay because I really prefer the promotion. At that point, it's too late to change the trial. The trial is already over. Yes, Your Honor. But anyways, I can see this point very clearly. But that is not the only thing that I have in my appeal. There are other issues I have raised in my appeal. The jury gave, as you have very clearly pointed out, back pay of $30,000 and front pay of $50,000. And it gave zero for compensatory damages, zero for any emotional. No, no. The $30,000 would be compensatory damages for back pay, and the $50,000 would be compensatory damages for front pay. I think what you're arguing is you wanted punitive damages? Yes, Your Honor. Well, that's a separate issue. That is not how compensatory damages are defined in the statute. Compensatory damages, back pay is a separate category, and compensatory damages are defined in the statutes as the… But the concept is if you were injured in some way as a result of some action by the university, you are being compensated for that, so it's called compensatory. Well, that is not how it is defined in the statute. Let me read it out here, if I may. There are two sections of the statute. This is Title 42, Section 1981, subsection capital A within parenthesis B and within parenthesis 3. It defines compensatory damages to include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. So pecuniary losses are not included in the definition of compensatory damages. It also says humiliation and loss of employment of enjoyment of life. Sorry? I see it. Emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life. Right. So these are… And it clearly says, in fact the statute clearly says this, they do not include back pay, interest on back pay, or any other type of relief authorized under… But the point is, I thought your argument was that initially that the court didn't instruct for loss of prestige, and then you're saying the argument against that is no, they did, because humiliation would be loss of prestige, or at least a form of humiliation. But if this jury found in your favor, they are compensating you for that wrong. They did find in your favor, and they did give you compensation. What did the jury do wrong, or what did the court do wrong in instructing the jury? Well, firstly, the court confused the jury about the elements of damages. It confused the jury by emphasizing pecuniary damages, back pay and front pay, and downgrading or sort of not giving that equal importance to these other damages, which I just read out. Well, why do you say it wasn't given equal importance? Because it was lower in the paragraph of instruction than the others? Well, it was because the court went back on back pay. In its instructions, it went back and said, the court said, as I said, the plaintiff is entitled to loss wages, even if they are difficult to calculate. Any uncertainty about the loss compensation to be awarded should be resolved in his favor. I don't understand your point. In order to be proper, the instruction would have had to, in two places, talk about emotional harm? No, Your Honor, I'm not saying that. I'm saying that the court talked about emotional harm and about back pay, but then it emphasized back pay in its instructions later on. It repeated the instructions on back pay. So what? It did not repeat the instruction on emotional damages. Why would it need to? Well, if it doesn't, then the jury would tend to think that emotional damages are not important. Well, I'm not sure I can agree with that. The jury is required to do everything the judge instructs, and one of the things the judge instructed was on emotional damages. Emotional pain. Well, the jury was confused. In fact, appendix page 63, jury's second note says, it reads as follows. What were the numbers for compensatory damages for both past damages and future? So the jury took this word compensatory damages to mean back pay and front pay only. Why do you say that? Because it refers to past damages and future damages. But damages include pain as well as pecuniary compensation. Right. But the way the numbers were, in fact, the judge, you also have clearly said here that numbers the jury gave were exactly equal to back pay and front pay. That's what the jury came to. Just so you understand the policy here, or the principle, I should say, when you go to a jury and you get a jury verdict, there has to be something quite exceptional for a court on review to overturn that jury verdict. And the system played out. I'm sure the university wasn't happy to have lost. Sounds like you're not happy with the amount you got or the relief you got. But you have to have a really good reason on both sides, you and them, to overturn a jury verdict. That's part of the system. No, I fully understand that. I respect the jury verdict, and the jury did work very hard on this, and, of course, a little bit for a few hours after the trial was over. It was a four or five-day trial. But in this particular case, the main thing is the jury. Well, I guess the most clear error is really on jury instructions about punitive damages. Well, you didn't request punitive damages until right before the trial, did you? That is not correct. The trial judge was in error on that. He said that I asked for punitive damages only at the charge conference on 30th of March. Was it in your complaint? It was not in the complaint, but in the proposed jury instructions submitted on two years before that, two years before trial, my counsel had requested that jury be instructed on punitive damages. Okay. So that was two years before trial. And what the court said was that a court clearly was error in that because surely its statement that I had not asked for it any time before the charge conference was incorrect. It was a clear error. And therefore, it took it out. Then it says that since I asked so late, Seton Hall would be prejudiced if it instructed the jury on punitive damages at that late in the proceedings. But Seton Hall had noticed for at least two years that I was seeking punitive damages. Okay. All right. Why don't we hear from Mr. Perino, and then we'll get you back on rebuttal. Okay. Thank you. Mr. Perino, I'm sorry. I may still have screwed up the front. While you're getting ready, Mr. Perino, I realize this is an appeal and cross-appeal, but we're going to, in effect, put them all together and give you your 15 minutes on that. If there's something, I'm probably not going to separate them. So you just deal with them both at the same time. Thank you, Your Honor. May it please the Court, good morning. My name is John Perino, and I represent Seton Hall University in this matter. This is an appeal from a judgment, and district court's subsequent order denied Seton Hall's motion for a new trial. The underlying claim here was that Professor Kant was denied promotion to the rank of full professor in the 98-99 academic year in violation of Title VII. The university submits that the judgment must be reversed, and that the matter remanded to the district court for a very, very simple reason. There was never a finding by the jury that retaliatory animus played a role in the decision-making process and that it had a determinative effect on the outcome. Now, how do you say that? Because my impression was that was really the only practical thing that was before the jury. Isn't that right? Hadn't some of this been stripped out prior to the trial via summary judgment, some of these? Yes, the only thing that was tried was retaliation, Your Honor. So if that's the only thing that's tried, and you've got instructions that I assume you don't or do you have problems with the instructions that were given? Absolutely, Your Honor, and particularly. Which particular instruction? Okay, the instruction that was initially given on April 3rd, the first time the judge talked to the jury, was that Dr. Kant would prevail if the jury found that the university's stated reasons were not the true reason, and now I'm quoting, and that Seton Hall was motivated at least in part. Didn't he give a curative instruction on that? I will get to that, Judge. The first thing he said was at least in part by the retaliation, right? Thus, there was not the determinative effect instruction that Woodson versus Scott Paper in this circuit absolutely requires. The following day, before the jury had retired, the court did amend the instruction to the jury, but the court only amended the instruction in one place, and that was jury charge number 10, and the amended charge provided that the jury could find for Dr. Kant if the reasons proffered were not the true reasons, and again I'm quoting, that retaliation was more likely than not a determinative factor in the failure to promote. And how is that different than what Title VII requires, which is it's a determinative effect on the outcome of the process? That is the proper instruction, instruction number 10. But how is this? I can see a problem with the first instruction, but I don't see much. Okay, Judge, the second one, number 10, I can see that's the proper instruction, but I think the law teaches we have to look at the instructions as a whole. You go to the very next instruction, instruction 11, which the university asked be amended to also the determinative effect, and jury charge 11 said that if it determined that Dr. Kant had been retaliated against in the early stages, in other words by the department chair in the early stages, and subsequent evaluators reviewed those recommendations, then the court said you may conclude that the retaliation had an impact on the ultimate decision. The obvious problem with that, Your Honor, is that whether or not the earlier evaluation had an impact is not the correct legal standard. The correct legal standard is whether or not retaliation had a determinative effect on the promotion. Well, why isn't the jury presumed to have understood the two instructions and interpreted 11 in light of what it had just been instructed in number 10? Judge, I think that there is a convergence here. On day one, you have them being told you only have to find that it is in part responsible. On day two, in instruction 10, now it's changed to determinative effect. They had not begun their deliberations. That is correct. Correct? Yes, absolutely correct. Okay. Then the next one that they read doesn't talk about determinative effect. It talks about impact. Yes, but why wouldn't they understand impact to equate to determinative effect, as the previous instruction very explicitly said? Judge, I think that's pure conjecture, and I think in the universe you specifically ask that the impact be amended also. I'm not suggesting that there's a waiver problem. I'm just asking why the jury wouldn't be thought to read impact in 11 as carrying forward the concept from 10 of determinative effect. Judge, I think you also have to look at the jury verdict sheet in determining what was the jury really deciding. The jury verdict sheet, Your Honor, question number one said, did the department chair, Dr. Dahl, was his vote in retaliation and determinative effect? We read it. And the jury said yes to that. Question number two asked about the dean. They said no to that. The third question is not did the ultimate decision have a determinative effect, but simply whether or not the vote from number one or number two had contaminated the process. Why isn't the problem for you the same, that having been instructed clearly, explicitly, that determinative effect was the standard, that in understanding the word impact or in understanding the word contaminated, the jury would understand that meant was a determinative cause? Judge, I respectfully submit that that's a real stretch. They're first told in part. When he cured a judge, he didn't say, I was wrong yesterday when I talked about in part. So you have a jury going in there where the judge the first day has said, okay, it only has to be in part. The second day says, okay, determinative impact. The next instruction says only impact. And then when they're answering the question, Judge, they never answered the question did it have a determinative impact. And, Judge, the trial court never defined contaminated, never said what contaminated meant, never said contaminated means the same thing as determinative impact. In fact, respectfully, Judge, if contaminated were to mean the same thing as determinative impact. But isn't also part of the problem here. No, you're fine. When I look at these instructions, I almost had the impression that this judge may have been surprised by the verdict. And there can't necessarily get tone on a piece of paper. But looking through some of the language in the instructions, it was as if there was a little tilting against Mr. Kahn and in favor of the university. I mean, I'm just. Judge, I read the same thing. We didn't try the case. I didn't try it. I wasn't there. I read the exact same thing. I'm not sure that I would agree, but certainly. We weren't there. And we weren't there. But it's, you know, just after the judge initially gave the wrong instruction, you may conclude that the retaliation had impact on the ultimate decision, which was later clarified or corrected. And then the judge says. No, impact was not corrected. That wasn't corrected? It was not. We asked what it was not. We asked that the jury interrogatory be changed, and it was not. But the court says, and to put it bluntly, in the case, the plaintiff's evidence only refers to two persons who he, the plaintiff, alleges were the ones who retaliated, Dr. Dahl and Dr. Martin. So, therefore, there was never a determination by the jury that the ultimate decision was made, the ultimate decision, that retaliation played a determinative effect on the ultimate outcome. If we assume that the verdict's sheet, its use of the word contamination, was in error, why wasn't it harmless error? Because it goes to the very heart of what this circuit requires a finding of by a jury in order for a plaintiff to prevail, Judge. It goes to the very heart of it. In Woodson, the instruction was a motivating factor. That's pretty strong. And this court overturned that and said it was an abuse of discretion to say motivating factor as opposed to determinative factor. It goes to the heart of what must be proved. It just cannot possibly be harmless error, respectfully. Can you point to any case where we've ever reversed and remanded for a new trial based solely on an improperly worded verdict sheet? I've not seen one. I'm standing here, and I'm certain, Judge, if there was one in this circuit, I would have found it. You don't have one? Okay. I didn't think you cited one. Counsel, isn't our review standard as to the precise wording of verdict form questions deferential, abuse of discretion? That is absolutely correct, Judge. However, the review standard with respect to what is said in the instructions is not. There it's plenary. There it's plenary. And I go back to my argument. But your strongest argument is that the word contaminated in the verdict form could have been misunderstood. Well, Your Honor. And maybe that's right. But whether there could have been better wording isn't the issue. I don't think. It looks to me like the issue is whether the choice of wording by the district judge was so bad as to constitute an abuse of discretion. Judge, again, I'll refer back to the Miller-Signet and the Woodson case. There this court found it was an abuse of discretion, not to use the words determinative effect as opposed to motivating factor. That was an abuse of discretion. In a verdict form. No, that was not in a verdict form. Well, that's the point I'm trying to make. That was in the instructions. But it's the same standard, Judge. This court used the same standard, an abuse of discretion standard. And they found that that was an abuse of discretion. And if it's an abuse of discretion in an instruction, it seems to be logical that it's also an abuse of discretion in a verdict. Well, I'm not so sure that follows. My impression of the case law is that trial judges are given considerable leeway in the choice of the precise wording of verdict form questions. Judge, and I absolutely agree with that. I mean, obviously I agree with that. But the fact is if you look at this in its entirety. But there's a big difference in instructions because instructions are what the legal rules are. The verdict form keys off the facts in the case. But, Judge, I don't think there can be any legitimate argument that this verdict form correctly set forth what the test in this circuit is. You may say they interpreted the word contaminated to mean the correct legal standard. But, Your Honor, the correct words were not used in the verdict sheet. What about your third argument on the court excluding the faculty votes from the prior denials? Your Honor, at the beginning of trial, Professor Kant moved to exclude any evidence as to what the votes were in his three prior attempts to be promoted. At the same time, he asked that the vote of the department chair be admissible, and the court so ruled. Judge, if we're going to let in the votes of the department chair in this case, to me the interest of justice is required. Wouldn't the evidence cut both ways? I mean, you could argue in the past he was for him and he finally— In the past he was what, Judge? In the past he voted for him, correct? Absolutely. And something happened and it made him reconsider, and he has a chance to explain why he now votes against him. It would seem like you could make a pretty good argument as trial counsel that this could be beneficial to the university as opposed to a detriment. Well, but at the same time, you could also argue two things, Judge. You can argue, number one, this shows that Dr. Dahl's vote did not have a very great impact on subsequent evaluators because every other instance he voted yes and subsequent evaluators said no. So remember, what we're looking at here is whether or not Dahl's vote had a determinative impact on subsequent evaluators. They hadn't listened to him in the past. If the jury was aware that in the past all these subsequent people voted against Dr. Kahn, the jury may very well have said, wait a minute, maybe he's not so important. Maybe he's not determined. It sort of brings us back to the point I made to Professor Kahn, which is that it's tough, very tough, to overturn a jury verdict because the jury sorts out the wheat from the chaff over a long process and it's got to be pretty significant for us. For example, on this issue, let's say we agree with you, but maybe the jury didn't agree with us as to Dr. Dahl, as to why his testimony should be, his prior votes should be in evidence and not in evidence. Well, that wasn't the jury's call as to whether they should be in evidence. No, I understand. It was the judge's call. Judge, I see my time is up. Go ahead. And I understand what you're saying, and I say this very respectfully, but you did it in Woodson on the same facts, Judge, that the determinative impact, I'm sorry, the determinative effect was not given to the jury and consequently you did overturn. What were the facts of Woodson again? Why don't you review them with us again. In Woodson, the initial charge. It was somebody who was, was it a retaliation claim? Yes, it was Title VII. It was a retaliation claim. And the real issue in Woodson was whether or not the Civil Rights Act of 1991 had any impact on this court's Signet v. Miller decision, which held there had to be a determinative effect. And the court examined that, and the court, because of the language of the Civil Rights Act of 1990, this court, because of the language of 1991, concluded without question, unequivocally, that the 1991 Civil Rights Act did not in any way impact on the need in this circuit for a determination by a jury that the retaliation animus had an impact, a determinative impact on the ultimate... And when was the curative instruction to Instruction 10 given in this case? It was given the day after the first one, Judge. And as Your Honor points out, it was before the entire judge. But you also had in this case, Judge, when we're talking about what did the jury understand, you also had in this case, Your Honor, a jury coming out asking a question, and a juror asked a specific question about this, the third question here. And it was never answered. He himself said it seems to be in conflict, the juror question, and that's in the record, Judge. So I think it's clear. Judge, thank you. Thank you very much. Judge, obviously, we're going to rely on our papers for the response. Thank you very much. Mr. Kahn, or Professor Kahn. How do you respond to the point that was made that it's clear that the jury instruction should have read for Instruction 11 that whatever was done in retaliation against you had a determinative effect, as opposed on what happened in turning you down for the promotion to full professorship? Well, I'm trying to read this instruction here. I mean, did the curative instruction later given the next day cure that as well? And if so, why? Well, the word determinative is not required under the standards in this case. No, under the Woodson case, the point being that under the amendments of 91, you need to have a, the instruction must be that the actions, the retaliation, had a determinative effect on what ultimately occurred. Not just an effect, but it had to, in effect, determine the outcome. And you're saying, for you to win, obviously you have to say that the jury did make that determination, that there was retaliation against me and it not only had it in an effect, it determined that I did not get to be a full professor because of that. Woodson case is not applicable here because Woodson case involved... But the point is, the judge admitted that he made a mistake as to Instruction 10. I don't agree with that. Why did he give the curative instruction the next day as to Instruction 10? No, this is the... I mean, this is what the final instructions are. Why did he give the curative instruction the next day? Initially, yes, there was an instruction which did not use the word determinative, and then later on the instruction... Why did he do it then? Because of the conference of counsel, et cetera, because of discussion among the counsel. Because he perceived that he had made a mistake the day before. Well, the point is that the jury, before he retired, it had the correct set of instructions. And second, Woodson is not applicable because Woodson was not a process involving multi-tier review. In Woodson case, the managers ranked as a part of reorganization, they ranked 27 employees. Woodson was ranked 25th at the bottom out of those 27 employees, and then the bottom five were terminated. And these three member committees' decisions are final. They were not reviewed by anybody here. In my case, it was... But I'm not talking about the facts in the case. We're talking about the actual instruction given. Well, I'm just saying it's not applicable because the facts are not applicable in my case because that was not a multi-layered review process. In my case, this was a multi-layered review process. And here, the standard laid down by this court in Abramson versus William Patterson College of New Jersey applies. It's in 2001. That's a case after Woodson case. And it says here, under our case law, this court has held, under our case law, it is sufficient if those exhibiting discriminatory animals influenced or participated in the decision to terminate. So the words they use here are influenced or participate. That, I think, is even weaker than contamination of the whole process. And then they are citing, this court cited Abramson versus Lighterlier in 1995 case. So therefore, for a multi-layered process, which is, again, an academic institution, William Patterson College of New Jersey, it is enough for this court, under this court's standard, if the people who participated in the review process influenced or those who exhibited discriminatory animals influenced or participated in the process. There's no question that Chairman Dahl participated in a very, very important way. First, he was in the department. He was a chair. And then he also participated in the college level. And, in fact, it is his college level board. But that's a different part of the rebuttal, I understand. But we'd ask you about the instruction. I think you've answered it. The rebuttal essentially is you respond to what Mr. Perrano said, not going back to, and since he didn't really respond to anything you said, your rebuttal is limited to that. Is there anything else that he has said that you want to respond to in a moment? Yes. The second thing is about the earlier promotion applications. Because in the summary judgment decision, the discrimination claim had already been thrown out. Only element which remained in the case was retaliation. And for retaliation, it was perfectly appropriate for the judge to allow the earlier votes of John Dahl, which were favorable, and then later he changes his vote because of my grievance that I filed against him as a retaliation for my filing the grievance. And since discrimination claim was thrown out, therefore what others decided on my application earlier was not relevant. And, of course, a promotion is a discrete event. Every promotion application has a set of documents which may be different from others, and decision makers are also different. Okay. Thank you very much. Thank you. We thank both parties for appearing before us, and we'll take the matter under advisement.